## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

MARVIN TURNER,

                **Plaintiff,**

      **VS.**

STEVE UPTON, *et al.*,

                **Defendants.**

**NO.  5:10-CV-502 (MTT)**

**Proceedings Under 42 U.S.C. §1983
Before the U.S. Magistrate Judge**

## ORDER AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants Steve Upton, Glen Johnson, William Powell, Victoria Malone, Michael Moore, Gary Caldwell, Benjamin Murphy, and Ricky Foskey.[1]  Doc. 43.  Because Plaintiff Marvin Turner has stated colorable due process and Eighth Amendment claims, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss be **DENIED**. It is further **ORDERED** that Plaintiff's Motion to Stay Discovery (Doc. 54) be **DENIED**, as moot, with the provision that discovery shall be reopened if the Recommendation to deny Defendants' Motion to Dismiss is adopted.

### FACTUAL AND PROCEDURAL HISTORY

This action involves claims that arose at Georgia Diagnostic & Classification Prison (GDCP), where it appears Plaintiff was confined from November 3, 2009 until February, 2011.  On a motion to dismiss, all well-pleaded facts in the complaint are accepted as true and construed in the light most favorable to Plaintiff.  Because Plaintiff is proceeding pro se, his pleadings are liberally construed.

---

[1] Earnest Mintz, Wesley Baker, Debra Hoobler, and James Brown are also named as defendants in this action but, to date, have not been served with a summons and complaint.

According to the Complaint, for the majority of his stay at GDCP, Plaintiff was confined in an area of the prison designed for maximum security inmates known as the Special Management Unit (SMU). Plaintiff states that he was also sometimes confined in a strip cell for days without any clothing, heat, or bedding, and that he was forced to participate in non-mandatory "behavioral modification" and "paramilitary training." Plaintiff then explains that he was not given notice of any disciplinary charges nor was he allowed any other form of due process prior to or during his confinement in SMU. Moreover, Plaintiff asserts that, on both occasions that he was held in a strip cell, he was also denied notice of a disciplinary infraction, a hearing, or the opportunity to present evidence on his behalf. Finally, Plaintiff complains that Defendants, in violation of the Constitution and of their own standard operating procedures, failed or refused to periodically review his confinement in SMU. In damages, Plaintiff seeks a total of $630,000 from each Defendant as well as an unspecified amount of punitive damages.

## DISCUSSION

In their Motion to Dismiss, Defendants advance several arguments including abuse of process, failure to state a claim, and qualified immunity. As an initial matter, Defendants are protected by Eleventh Amendment immunity from suit in their official capacity. Plaintiff, however, has stated colorable claims against Defendants in their individual capacities, and the Court cannot find at this point in the litigation that they are entitled to qualified immunity.

### Abuse of Process

Defendants argue that Plaintiff's claims should be dismissed for abuse of the legal process because Plaintiff provided an untruthful response and failed to disclose a previous lawsuit related to his imprisonment. Dismissal for abuse of process is not warranted in this case, however, because

Plaintiff's errors involving disclosure of his previous lawsuit do not evidence bad faith litigiousness or manipulative tactics as would be required for sanctions under <u>Rule 11</u> of the <u>Federal Rules of Civil Procedure</u>.

The Complaint in this case was filed using the Court's standard questionnaire.  Question 4 of this questionnaire reads "Other than the appeal of your conviction or sentence, have you ever submitted a lawsuit for filing  in <u>any</u> federal or state court dealing with the <u>SAME FACTS</u> involved in this lawsuit or otherwise  related to your imprisonment?"  Below the question appears a check box next to the word "yes" and a second check box next to the word "no."   In this case, Plaintiff completed and  submitted a copy of this questionnaire on three separate occasions: (1) on December 28, 2010 with the filing of his original Complaint (Doc.1), (2) on February 17, 2011 with the filing of a supplement to his original complaint (Doc.8), and (3) on February 25, 2011 with the filing of his Amended Complaint (Doc.9).   In response to Question 4, Plaintiff checked the box next to the word "no" all three times.

Defendants contend that these responses were inaccurate.  Defendants note that Plaintiff had previously filed another lawsuit in the Southern District of Georgia relating to his imprisonment at Georgia State Prison.  See <u>Turner v. Hall</u>, Civil Action Number CV699-116 (USDC SD Ga). According to the Defendants, Plaintiff's repeated failure to provide a truthful response or to disclose his other lawsuit demonstrates the sort of abuse of process that should result in the dismissal of this action.

In response, Plaintiff argues that the language of Question 4 is ambiguous and misleading. In particular, Plaintiff points to the emphasis placed on the words "same facts" as well the fact that the questionnaire provides only one yes/no opportunity to answer the question.  Based upon these

observations, Plaintiff believed that he was being asked whether he had previously filed any other lawsuit dealing with same facts as those raised in the instant lawsuit. Based upon this interpretation of the question, Plaintiff answered "no."

Plaintiff's explanation appears reasonable. Indeed, in an effort to resolve the very same ambiguity complained about by Plaintiff, the Questionnaire for Prisoners Proceeding Pro Se Under 42 U.S.C. § 1983 was revised in August, 2011. With regard to the information sought in Question 4 described above, the revised questionnaire now contains two separate questions: (1) "Other than an appeal of your conviction or sentence, and other than any habeas action, have you filed a lawsuit dealing with the same or similar facts or issues that are involved in this action?" (2) "Other than an appeal of your conviction or sentence, and other than any habeas action, have you ever filed any lawsuit while incarcerated or detained?" Additionally, the revised questionnaire also contains the following notice "NOTE: FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL."

In view of this ambiguity in the questionnaire and in the absence of any other indication of bad faith or a willful attempt to introduce false or misleading information, imposition of the sanction of dismissal under Rule 11(c) of the Federal Rules of Civil Procedure is inappropriate. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss for abuse of process be **DENIED**.

### Claims Against Defendants in Their Official Capacity

Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity,

or where Congress has overridden the state's immunity. Lassiter v. Alabama A & M University, 3 F.3d 1482, 1485 (11th Cir. 1993). Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. Carr v. City of Florence, Ala., 916 F.3d 1521, 1525 (11th Cir. 1990). Thus, if the state has not waived its immunity, the Eleventh Amendment bars a Section 1983 suit against that state. Cross v. State of Ala., 49 F.3d 1490 (11th Cir. 1995). By extension, the Eleventh Amendment also bars Section 1983 suits against state officials in their official capacities, because in such a case, the state is considered the real party in interest since an award of damages would be paid by the state. Id. at 1503.

In this case, Defendants are protected by Eleventh Amendment immunity. The State of Georgia has specifically preserved its Eleventh Amendment Immunity in the state constitution. Ga. Const. Art. 1, Sect. II, Par. IX(f). As explained above, official capacity defendants are not persons. As such, any Section 1983 claims against Defendants in their official capacity are not permissible. Accordingly, it is hereby **RECOMMENDED** that Plaintiff's claims for damages against the Defendants in their official capacities be **DISMISSED**.

### Claims Against Defendants in Their Individual Capacity

#### Eighth Amendment Claims

Defendants argue that Plaintiff's allegations fail to state an Eighth Amendment claim. At this stage of the proceedings, however, Plaintiff's contentions are adequate to state a claim that, by housing him a cell for days without any clothing, heat, or bedding, Defendants violated his rights under the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment including deliberate indifference to a serious risk of harm occasioned by a failure to provide for a prisoner's basic human

needs.  U.S.C.A. Const.  Amend. 8.  To sufficiently allege a claim of deliberate indifference in the context of an alleged deprivation of humane conditions of confinement, a Plaintiff must allege: (1) a deprivation of humane conditions of confinement, (2) actual awareness by prison officials of the serious risk to inmate health caused by said conditions, and (3) an intentional failure or refusal on by the officials to alleviate the conditions.  Farmer v. Brennan, 511 U.S. 825 (1994).

In his Complaint, Plaintiff asserts that: (1) he was placed in a strip cell on two separate occasions without clothing, heat, or bedding; (2) that these conditions were inhumane and posed a serious risk to his health, and; (3) that, despite their actual awareness of this risk, the Defendants intentionally subjected him to this risk and refused to take steps to alleviate the risk.

In response, Defendants essentially argue that Plaintiff's allegations are best described as complaints of mere discomfort.  Defendants then contend that since mere discomfort, without more, does not offend the Eighth Amendment, Plaintiff's Eighth Amendment claims lacks merit.  Contrary to Defendants' argument, Plaintiff allegations in this case amount to much more than complaints of mere discomfort.  Indeed, Plaintiff's allegations, if proven, could demonstrate an unconstitutional deprivation in the provision of humane conditions during portions of his confinement at GDCP.  Consequently, at this stage in the proceedings, the Court cannot conclude that Plaintiff has failed to sufficiently state an Eighth Amendment claim.  Accordingly, it is **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims be **DENIED**.

<u>Due Process Claims</u>

At this stage of the proceedings, Plaintiff's allegations that he was repeatedly deprived of due process with regard to his placement and continued confinement in SMU are sufficient to state a colorable claim.  The Fourteenth Amendment protects persons against deprivations of life, liberty,

or property without due process.  U.S.C.A. Const. Amend. 14.  To state a viable due process claim in the context of  prisoner classification, a prisoner must establish the existence of a liberty interest in avoiding the conditions of confinement that resulted from the classification.  See Sandin v. Conner, 515 U.S. 472 (1995).  The Constitution itself does not give rise to a liberty interest in avoiding a prisoner's classification or transfer to more adverse conditions of confinement.  Meachum v. Fano, 427 U.S. 215, 225 (1976).  Nevertheless, such an interest can arise from the expectations or interests created by a state's laws or policies.  Wolff v. McDonnell, 418 U.S. 539, 556-558 (1974).

To determine whether or not there is a state-created liberty interest with respect to a prisoner's classification, a comparative review of the post-classification conditions of confinement in relation to the ordinary incidents of prison life is required.  Sandin, 515 U.S., at 484.  If, following this evaluation, it appears that the post-classification conditions are so severe as to impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, a protected liberty interest as well as the right to due process may be established.  Id.

According to the Complaint, upon his arrival at GDCP, Plaintiff was assigned to the prison's SMU where he essentially remained from November, 2009 through February, 2011.  Plaintiff describes the SMU unit as a "supermax" facility specifically designed to isolate the state's most dangerous and recalcitrant prisoners from all other prisoners.  Indeed, Plaintiff contends that  the conditions within the SMU are more restrictive than any other form of incarceration in the state, including those on death row.  According to Plaintiff, some of these restrictions include: (1) the confiscation of all personal property for an indefinite period of time; (2) twenty-three hours per day of solitary confinement in a cell measuring approximately six feet by thirteen feet; (3) only one hour

per day of yard time in a nine foot by fifteen foot enclosure; (4) no access to a desk, stool, or electrical outlet; (5) no access to books, newspapers, magazines, or any other forms of media, and; (6) no access to educational, vocational, or rehabilitative programs.  In addition, as noted above, Plaintiff maintains that all inmates housed in SMU are required to participate in a paramilitary like "behavioral management program." Plaintiff next asserts that, in relation to the everyday incidents of prison life, the conditions of confinement in SMU clearly impose an atypical and significant hardship upon the inmates housed therein.  By extension, therefore, Plaintiff maintains that he has a protected liberty interest that has been abridged by the Defendants' repeated failure or refusal to afford him any type of due process with regard to his continued confinement in SMU.

In response, Defendants argue that Plaintiff's due process claims must fail because: (1) Plaintiff is lawfully confined; (2) Plaintiff has no constitutional right not to be transferred from one prison to another where the conditions of confinement may be more adverse; and, (3) Plaintiff has alleged no atypical condition of his confinement that is not ordinary for prison life in a Georgia Prison.  Noting that Plaintiff is a convicted murderer sentenced to life, Defendants conclude  that Plaintiff is not constitutionally entitled a hearing to determine whether or not he should be housed in a high-maximum facility such as SMU.

If Plaintiff's allegations are accepted as true, as is required at this stage in the proceedings, Plaintiff has sufficiently alleged viable claims of various violations of his right to due process.  That is, Plaintiff's allegations, if proven, may well demonstrate that he has a liberty interest in avoiding the restrictive conditions of confinement present in SMU and that, by failing to afford him any due process, this interest was improperly abridged.  Consequently, because the Court cannot conclude that Plaintiff has failed to sufficiently state a due process claim, **IT IS RECOMMENDED** that

Defendants' Motion to Dismiss Plaintiff's due process claims on the basis of his failure to state a claim be **DENIED**.


## Qualified Immunity

In addition to their other arguments, Defendants contend that they are entitled to qualified immunity, to the extent that they are being sued in their individual capacity.  In support of their claim of qualified immunity, Defendants argue that  Plaintiff has failed to show that he has suffered any constitutional deprivation.  Contrary to this assertion, and as has already been explained, Plaintiff has adequately alleged Eighth Amendment and due process claims which, if proven, could amount to compensable Eighth Amendment and due process violations under clearly established federal law.   As such, Defendants  have failed to demonstrate that they are entitled to qualified immunity.

## Motion to Stay Discovery

Also before the Court is a Motion to Stay Discovery filed by the Defendants.  Doc. 54.  As the period for discovery in this case has expired, the motion is **DENIED** as moot.  Should the Recommendation to deny the Defendants' Motion to Dismiss be adopted,  an additional ninety (90) day period to conduct any further discovery will immediately commence.  At the conclusion thereof, the parties will have thirty (30) days in which to file any dispositive motions.  All other provisions in the Court's original discovery order of September 6, 2011, (Doc. 19) shall remain in effect.

CONCLUSION

In accord with the above, it is **RECOMMENDED** that Defendants' Motion to Dismiss be **DENIED**.  Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO ORDERED AND RECOMMENDED**, this 6th day of August, 2012.


s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge