IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MARVIN TURNER, | : |
| Plaintiff, | : |
| v. | : NO. 5:10-cv-502 (MTT) |
| STEVE UPTON, *et al.*, | : |
| Defendants. | : Proceedings Under 42 U.S.C. § 1983 |
| | : Before the U.S. Magistrate Judge |

## RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Steve Upton, Glen Johnson, William Powell, Victoria Malone, Michael Moore, Gary Caldwell, Benjamin Murphy, and Ricky Foskey. Doc. 67. Because there are no genuine issues of material fact regarding Plaintiff's due process and Eighth Amendment claims related to his incarceration in the Special Management Unit (SMU) at Georgia Diagnostic and Classification Prison (Georgia Diagnostic), and because Defendants have shown that they are entitled to judgment as a matter of law, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** regarding those claims.

There are genuine issues of material fact, however, regarding Plaintiff's due process claims against Defendants Upton, Moore, and Powell related to Plaintiff's alleged confinement in a strip cell for ten days. Accordingly, it is **RECOMMENDED** that Defendants Upton, Moore, and Powell be **DENIED** summary judgment on those claims. Because Plaintiff failed to allege a physical injury regarding his confinement in the strip cell, however, any recovery would be limited to nominal damages.

Additionally, the Court has been unable to serve Defendants Earnest Mintz, Wesley Baker, Debra Hoobler, and James Brown based on the information provided by Plaintiff. On February 21, 2013, the Court ordered Plaintiff to show cause as to why his claims against Defendants Mintz, Baker, Hobbler, and Brown should not be dismissed. Doc. 69. To date, Plaintiff has failed to respond to the Court's order. Accordingly, it is hereby **RECOMMENDED** that Defendants Mintz, Baker, Hoobler, and Brown be **DISMISSED** from this lawsuit.

PROCEDURAL HISTORY

On December 28, 2010, Plaintiff Marvin Turner filed his Compliant pursuant to 42 U.S.C. § 1983 alleging various constitutional deprivations arising while Plaintiff was incarcerated in the SMU at Georgia Diagnostic. Doc. 1. Plaintiff alleged multiple claims including: conspiracy to retaliate against Plaintiff by transferring him to the SMU at Georgia Diagnostic; improper handling of Plaintiff's grievances; denying Plaintiff access to courts; depriving Plaintiff of personal property; failing to supervise prison staff; denying Plaintiff due process by placing and holding him in the SMU at Georgia Diagnostic without a hearing; denying Plaintiff due process by holding him in a strip cell for ten days; and violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment based on his conditions of confinement in the SMU and the strip cell. Id.

Following a frivolity review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed Plaintiff's claims regarding the conspiracy to retaliate by having Plaintiff transferred to the SMU at Georgia Diagnostic, the improper handling of Plaintiff's grievances, the denial of Plaintiff's access to courts, the deprivation of Plaintiff's personal property, and the failure to supervise the Georgia Diagnostic prison staff. Docs. 20, 39. The Court also dismissed

Plaintiff's claims for injunctive and declaratory relief. Id.[1] Plaintiff's due process and Eighth Amendment claims were allowed to proceed. Id. The Court therefore ordered service upon Defendants Upton, Johnson, Powell, Malone, Moore, Caldwell, Murphy, Foskey, Mintz, Baker, Hoobler, and Brown. Docs. 21-32. The Court was unable to effectuate upon Defendants Mintz, Baker, Hoobler, and Brown. Docs. 34-36; See Doc. 42.

On November 4, 2011, Defendants Upton, Johnson, Powell, Malone, Moore, Caldwell, Murphy, and Foskey filed a Motion to Dismiss Complaint. Doc. 44. On September 17, 2012, the Court adopted the Recommendation (Doc. 57) to deny Defendants' motion (Doc. 60). Although the Court dismissed Plaintiff's claims against Defendants in their official capacity, Plaintiff's due process and Eighth Amendment claims were allowed to proceed. Doc. 60. On February 14, 2013. Defendants Upton, Johnson, Powell, Malone, Moore, Caldwell, Murphy, and Foskey filed the instant Motion for Summary Judgment. Doc. 67. Because the Court still was unable to effectuate service upon Defendants Mintz, Baker, Hoobler, and Brown, the Court ordered Plaintiff to show cause as to why those Defendants should not be dismissed from this action on February 21, 2013. Doc. 69. Plaintiff did not respond to the Court's order to show cause.

## FACTUAL BACKGROUND

**1. The SMU at Georgia Diagnostic**

In 2007, The Georgia Department of Corrections constructed the SMU at Georgia Diagnostic as a specialty unit to centralize the most problematic inmates in Georgia's prison system. Moore Aff. (Doc. 67-3). The SMU is not used for administrative segregation or for isolation, but rather is used to house inmates with a history of disciplinary infractions. Id. All inmates in the SMU are deemed security risks and considered maximum security inmates. Id. Inmates are first assigned to the SMU based on disciplinary classification or transfer from an

---

[1] Plaintiff was transferred from Georgia Diagnostic to Macon State Prison in March 2011. Doc. 11.

SMU at another prison. Id. Disciplinary classification may arise from repeated disciplinary infractions, a designation as a security threat, or a designation as an escape risk. Id.

The dormitories in the SMU at Georgia Diagnostic are divided into six wings labeled E, F, D, C, B, and A wings. Id. Each wing contains thirty-two (32) single-man cells. Id. Although wings E, F, and D are considered the more restrictive wings in the SMU, many conditions are the same throughout all wings. Id. The SMU at Georgia Diagnostic has central heat and air conditioning, and the thermostat for each wing is set at 78 degrees Fahrenheit in the summer and 74 degrees Fahrenheit in the winter. Id. There are three lights in each cell of each wing, including a night light that remains on all night. Id. The overhead light remains on until 11:30 p.m. on the weekdays and until 1:00 a.m. on the weekends. Id. Prison officials distribute food to the inmates three times a day on the weekends and two times a day on the weekdays. Moore Aff. (Doc. 67-2). According to Defendants, inmates in all wings of the SMU are allowed visitation on the weekend and holidays, legal materials, showers three times a week, and recreation up to five hours per week. Id. Defendants maintain that inmates can and do refuse meals, showers, recreation, and visitation. Id. Mental health and medical officials also conduct rounds to observe inmates in all wings. Id.

Additionally, all inmates in each wing are required to participate in cell inspection. Id. A routine inspection is conducted in each wing every morning. Id. Inmates are required to maintain their cells as "inspection ready" between the hours of 8:00 a.m. and 4:30 p.m. every day. Id. To be inspection ready, a cell must be orderly with the bed made, all items off of the floor, and all clothing folded and shelved. Id. An inmate must remain standing while his cell is inspected. Id. An inspection of a wing can last as long as thirty minutes. Id.

The SMU at Georgia Diagnostic utilizes a program in which the inmates progress though different wings in the SMU. Id. Although inmates often refer to the program as the "step down" program, prison officials refer to program as progressing through "phases." Id. Inmates placed in the SMU begin in the most restrictive wing and progress through the different wings, earning increased privileges as they progress. Id. Inmates typically start in E-Wing and progress through each wing to A-Wing, and then to general population if cell space is available. Id. If an inmate receives a disciplinary report, fails to follow instructions, or refuses to participate in inspections, the inmate may be assigned back to E-Wing, even if the inmate had progressed all the way to A-Wing. Id.

E-Wing is the most restrictive wing. Id. In E-Wing, inmates are allowed only state issued property such as a uniform, mattress, and items from the prison library. Id. Inmates are not allowed personal property in E-Wing. Id. Once moved to F-Wing, inmates receive their personal property such as compact disc players, personal clothing, games, and cards. Id. There are no televisions in E-Wing or F-Wing. Id. In D-Wing, the cells have televisions. Id. Inmates in E, F, and D wings are required to be handcuffed and wear leg irons every time they come out of the cell. Id. Beginning in C-Wing, inmates do not have to wear leg irons when outside of the cell. Id. Inmates in all wings must be handcuffed and accompanied by guards when outside of the cell. Id.

The SMU also contains a number of cells referred to as "strip cells." Id. According to Defendants, strip cells are used for violent inmates or inmates who pose a threat to themselves or others. Id. Defendants maintain that strip cells are non-punitive and intended to be used for a "cooling off" period of eight hours. Id. Inmates placed in the strip cells in the SMU at Georgia Diagnostic are usually housed in E-Wing. Id. All personal and state issued property is taken from an inmate placed in a strip cell. Id. The inmate is provided with a paper gown and booties. Id.

At the time Plaintiff was in the SMU at Georgia Diagnostic, there were no official standard operating procedures in place for the SMU. Id. Prison officials were in the process of considering a draft policy of the standard operating procedure and were phasing the draft policy into use. Id. The official standard operating procedures for SMU were finalized in 2012. Id. Although they are not specifically relied upon, Defendants have submitted the finalized standard operating procedures for the Court's reference. Def. Ex. 9 (Doc. 67-12). The general conditions and privileges in the SMU as described in the standard operating procedures are consistent with the affidavit submitted by Defendants. See id.

With regard to the specific privileges of each wing, however, the standard operating procedures deviate from the conditions described above. Id. Specifically, The standard operating procedures reference Attachment 4, the SMU Privilege List. Id. The SMU Privilege List details particular privileges prescribed to each of wing. Id. According to the SMU Privilege List, E-Wing is more restrictive than described above. Id. The SMU Privilege List states that recreation is limited to "in cell only," visitation is not allowed for the first thirty days and followed by one visitation per month, and showers must be taken in the cell. Id.

   2. **Plaintiff's Confinement in the SMU**

Plaintiff Marvin Turner is incarcerated pursuant to a murder conviction, for which he is serving a life sentence without the possibility of parole. Turner Dep. at 13 (Doc. 78-1); see also Tuner v. State, 268 Ga. 213 (1997). Plaintiff developed a significant disciplinary history during his incarceration prior to his transfer to the SMU at Georgia Diagnostic. Turner Dep. at 33-35 (Doc. 78-1). Plaintiff's previous infractions during his incarceration included an escape, multiple assaults on prison officers, possession of a weapon, and setting a fire outside of his cell. Id. While previously incarcerated at Georgia State Prison, Plaintiff was profiled as an escape risk

based on his escape from Hays State Prison. Moore Aff. (Doc. 67-3); Def Ex. 1 (Doc. 67-4); Turner Aff. at 32-33 (Doc. 78-1). Due to this previous escape, Plaintiff was assigned to the SMU at Georgia State Prison. Turner Aff. at 32-34 (Doc. 78-1); Moore Aff. (Doc. 67-3).

In November 2009, Plaintiff was transferred from Georgia State Prison to Georgia Diagnostic. Turner Aff. at 48 (Doc. 78-1); Moore Aff. (Doc. 67-3). Because Plaintiff was in the SMU at Georgia State Prison, he was assigned to the SMU at Georgia Diagnostic. Moore Aff. (Doc. 67-3). Plaintiff did not receive any type of hearing regarding his placement in the SMU at Georgia Diagnostic. Turner Aff. at 53 (Doc. 78-1). Plaintiff also contends that he did not receive orientation regarding the SMU at Georgia Diagnostic. Id. Plaintiff challenged his assignment to the SMU by filing a classification appeal. Def. Ex. 3 (Doc. 67-6). Defendant Upton denied Plaintiff's classification appeal. Id.

Whether or not he received orientation regarding the SMU at Georgia Diagnostic, Plaintiff learned how to progress through the phases of the SMU and understood that failing to follow instructions could result in placement a more restrictive wing. Turner Dep. at 58 (Doc. 78-1). Because E-Wing was under renovation when Plaintiff arrived at Georgia Diagnostic, Plaintiff began in F-Wing. Id. at 59. Plaintiff remained subject to the E-Wing restrictions, as Plaintiff's personal property was confiscated. Id. at 53. Plaintiff then progressed through the different phases of the SMU from November 2009 to October 2010. Id. at 59, 66. During that time, Plaintiff was allowed recreation, showers, visitation, mail, meals, and access to his legal materials. Id. at 26-27, 40, 55. Plaintiff was also required to be ready for cell inspection, participate in cell inspection, and be handcuffed and escorted to and from the yard and the shower. Id. at 26-27. Plaintiff received visitors, but visitation was limited to non-contact visits with a glass partition between Plaintiff and his visitors. Id. at 27.

In October 2010, Plaintiff was housed in A-Wing under the belief that he would soon be transferred to general population at Valdosta State Prison. Id. at 60. When Plaintiff came to believe that he would not be transferred, he refused to comply with inspection orders. Id. 60-65. Plaintiff therefore was moved from A-Wing to E-Wing October 1, 2010. Id. at 65; Moore Aff. (Doc. 67-3). Plaintiff contends that he was placed in a strip cell and left completely naked for twelve hours. Id. at 67-68, 89. Plaintiff further contends that he was later placed back in the strip cell for failing to comply with inspection orders. Id. at 89-90. On that occasion, Plaintiff was allegedly left naked for ten days. Id. Plaintiff contends that he was denied yard time and denied food for 24 hours while he was naked in the strip cell. Id. Although Plaintiff contends that he was left naked for ten days, starting on October 12, records show that he was allowed visitation from his mother and niece on October 17, 2010. Def. Ex. 7 (Doc. 67-10).

Plaintiff remained in E-Wing until November 19, 2010, when he moved to C-Wing and received his personal property. Moore Aff. (Doc. 67-2); Def. Ex. 5 (Doc. 67-8). On March 1, 2011, Plaintiff was transferred from Georgia Diagnostic to Macon State Prison. Doc. 11.

## LEGAL STANDARD

In accordance with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Cleotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff alleges that Defendants violated his due process rights by placing and holding him in the SMU at Georgia Diagnostic without a hearing and by allegedly placing Plaintiff in a strip cell for ten days. Plaintiff also alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment based on the the conditions of his confinement in the SMU at Georgia Diagnostic and the conditions of the strip cell.[2] Plaintiff's claims against Defendant Upton arise from Defendant Upton's alleged personal knowledge of and involvement in Plaintiff's placement in the SMU and the strip cell. Plaintiff's claims against Defendants Johnson, Malone, Powell, Moore, Caldwell, Murphy, and Foskey arise from their membership on the Classification Committee, which presided over the placement of inmates in the SMU.

---

[2] Plaintiff also continues to make allegations regarding his alleged retaliatory transfer from Georgia State Prison to the SMU at Georgia Diagnostic. As stated above, the Court previously dismissed Plaintiff's claim alleging that Defendants conspired to retaliate against Plaintiff based on his transfer to the SMU at Georgia Diagnostic.

Plaintiff's claims regarding his confinement in the strip cell are limited to Defendants Upton, Moore, Powell, and Murphy.

The evidence in the record, construed in the light most favorable to Plaintiff, fails to show that the general conditions of confinement in the SMU at Georgia Diagnostic are so atypical from ordinary prison life as to create a liberty interest entitling Plaintiff to due process. The evidence also fails to show that the general conditions of the SMU or the specific conditions related to Plaintiff's alleged placement in a strip cell constitute cruel and unusual punishment. Additionally, because the law is not clearly established that the conditions of the SMU deprived Plaintiff of a constitutionally protected liberty interest or constituted cruel and unusual punishment, or that the conditions of the strip cell constituted cruel and unusual punishment, Defendants are entitled to qualified immunity on those claims. There are genuine issues of material fact, however, regarding Plaintiff's due process rights related to his alleged placement in a strip cell.

### Due Process

Plaintiff alleges that Defendants violated his constitutional right to due process by placing and holding Plaintiff in the SMU at Georgia Diagnostic without a hearing between October 2009 and November 2010.[3] Plaintiff also contends that Defendants Upton, Moore, Powell, and Murphy violated his due process by placing and holding Plaintiff in a strip cell for ten days.

---

[3] The parties address Plaintiff's due process claims as both substantive and procedural due process claims. A claim shall not be asserted under the generalized notion of substantive due process, however, when a constitutional amendment "provides an explicit textual source of constitutional protection against" the plaintiff's claims. Graham v. Connor, 490 U.S. 386, 395 (1989). In this case, the Eighth Amendment provides a source of protection for Plaintiff's claims related to the conditions of his confinement in the SMU. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 345 (1981). As such, any "substantive due process" claim is subsumed within Plaintiff's Eight Amendment claims.

The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV. As life or property is not at issue here, Plaintiff is entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment. See Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999).

A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or a state may create a liberty interest. See Sandin v. Connor, 515 U.S. 472, 483-84 (1995); Al-Amin v. Donald, 165 Fed. Appx. 733, 738 (11th Cir. 2006). In the prison context, a liberty interest may arise from the Due Process Clause itself where the conditions of the prisoner's confinement create a circumstance causing the confinement to exceed the sentence imposed by the court. See Sandin 515 U.S. at 484. Additionally, a state may create a liberty interest by imposing a deprivation that amounts to an "atypical and significant hardship on the inmate in relation to the ordinary conditions of prison life." Id.

A prisoner does not have an inherent constitutional right to be free from confinement in segregation. See id. at 487; See Al-Amin, 165 Fed. Appx. at 738. An inmate therefore has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. Id. at 484; Wallace v. Hamrick, 229 Fed. Appx. 827, 830 (11th Cir. 2007). Courts should also consider the duration of the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship. See Al-Amin, 165 Fed. Appx. at 738; See also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

11

1. <u>Incarceration in the SMU at Georgia Diagnostic</u>

The general conditions at the SMU at Georgia Diagnostic do not amount to a dramatic departure from ordinary prison life such that they create a liberty interest that entitles Plaintiff to due process. Plaintiff complains of the "paramilitary" aspects of the daily inspections at SMU, the temperature in the cells, the amount of exercise allowed, the lack of vocational programs, and the requirement that prisoners remain handcuffed and shackled when outside of their cells.

Viewed in the light most favorable to Plaintiff, the evidence shows that throughout the different wings at the SMU, Plaintiff was provided the opportunity for weekly recreation for up to five hours,[4] showers three times a week, the same meals as general population, visitation, access to medical care, and access to law materials. Although the conditions that Plaintiff alleges are more restrictive that those in general population, the conditions do not amount to an atypical and significant hardship. The deprivations that that Plaintiff encountered as a result of his placement in the SMU can be expected for an inmate serving a sentence without the possibility of parole for murder who has a prison disciplinary history including an escape and multiple assaults on prison officers. <u>See</u>, <u>e.g.</u>, <u>Searcy v. Culliver</u>, 2008 WL 926588 (S.D.Ala. 2008).

The length of Plaintiff's incarceration in the SMU also does not give rise to a liberty interest. Although confinement in segregation for over a year may give rise to a liberty interest, confinement in segregation for an extended period of time does not necessarily constitute an atypical and significant hardship giving rise to a liberty interest. <u>Compare</u> <u>Williams</u>, 77 F.3d at 374 n.3 (liberty interest *assumed* to be created by a year of solitary confinement) <u>with</u> <u>Al-Amin</u>, 165 Fed. Appx. at 738 (no liberty interest created by confinement in segregation for three years). Although Plaintiff was incarcerated in the SMU at Georgia Diagnostic for over a year, his confinement in segregation, the conditions of which were not a dramatic departure from the

---

[4] The evidence shows that Plaintiff refused exercise on multiple occasions. Def. Ex. 8 (Doc. 67-11).

ordinary aspects of prison life, did not constitute an atypical and significant hardship. Accordingly, Plaintiff did not have a liberty interest regarding his confinement in the SMU entitling him to due process, and Defendants are entitled to summary judgment on Plaintiff's due process claims regarding his confinement in the SMU.

    2. <u>Incarceration in the Strip Cell</u>

There are genuine issues of material fact regarding Plaintiff's alleged placement in a strip cell for ten days by Defendants Upton, Moore, and Powell. Defendants contend that Plaintiff was not placed in a strip cell for ten days, that Plaintiff was merely placed in E-Wing, and that inmates commonly confuse E-Wing with a strip cell. Plaintiff maintains that he was placed and left in a strip cell distinct from E-Wing for ten days where he was deprived of all clothing, exercise, showers, and certain meals. Plaintiff claims that he was afforded no due process regarding his placement in the strip cell. Although the visitation log showing that Plaintiff was visited by his mother and niece during that time period casts some doubt on his allegations, the evidence is sufficient to create a genuine issue of material fact regarding his claim.

The Court cannot find as a matter of law that the conditions of Plaintiff's confinement in the strip cell did not present an atypical and significant hardship. The complete denial of all clothing and yard time for ten days may constitute a dramatic departure from the ordinary aspect of prison life and an atypical and significant hardship. Although Defendants contend that Plaintiff refused exercise during this time period, the evidence shows that on two dates he was denied exercise by Defendant Moore. Def. Ex. 8 (Doc. 67-11). Although the dates that Plaintiff was refused exercise are not an exact match to Plaintiff's alleged dates in the strip cell, they are close. Viewed in the light most favorable to Plaintiff, those dates may be consistent with Plaintiff's allegations. As such, Plaintiff may have been entitled to due process regarding his

alleged placement and holding in the strip cell for ten days by Defendants Upton, Moore, and Powell.

There is no evidence showing that Plaintiff was afforded due process regarding his alleged placement in the strip cell. Defendants contend that the strip cell is non-punitive and only used as an eight-hour cooling off period for inmates who pose a risk to themselves or others. Based on the Plaintiff's testimony, however, a reasonable jury could find that confinement to a strip cell for ten days without exercise or showers was intended as a punitive measure.

Plaintiff contends that was placed in the strip cell as a disciplinary action for failing to comply with inspection, but did not receive a disciplinary report or notice of the infraction. "The requirements of due process for prisoners facing disciplinary actions are: '(1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals.'" Wallace v. Hamrick, 229 Fed. Appx. 827, 831 (11th Cir. 2007) (quoting Young v. Jones, 37 F.3d 1457, 1459-60) (11th Cir. 1994)).

Defendants do not contend that Plaintiff was afforded due process, as Defendants dispute that Plaintiff was placed in the strip cell at all, suggesting that Plaintiff is confused about what constitutes a strip cell. Moreover, although Defendants address Plaintiff's alleged placement in the strip cell under the Eighth Amendment, Defendants do not address Plaintiff's due process claim regarding his placement in the strip cell. As such, there are genuine issues of material fact regarding Plaintiff's alleged placement in the strip cell for ten days by Defendants Upton and Powell.

Plaintiff's allegations against Defendant Murphy regarding his placement in the strip cell, however, are insufficient to support a finding against Defendant Murphy. Plaintiff claims that Defendant Murphy witnessed Plaintiff naked in the strip cell and that Plaintiff "gave him the grievance, but he refused to go over his superior's head to rectify the situation." Turner Dep. at 100 (Doc. 78-1). Plaintiff does not allege that Defendant Murphy was responsible for keeping him in the strip cell, and Plaintiff implies that Defendant Murphy did not have any authority regarding Plaintiff's placement in the strip cell. Additionally, receiving Plaintiff's grievance does not impose liability upon Defendant Murphy. See, e.g., Zerby v. McNeil, 2010 WL 2711658 (N.D.Fla. 2010). Accordingly, Defendant Murphy is entitled to summary judgment regarding Plaintiff's claim that he was denied due process.

## Eighth Amendment

Plaintiff contends that the both conditions of the SMU at Georgia Diagnostic and the conditions of the strip cell violated his Eighth Amendment right to be free from cruel and unusual punishment. To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is objectively serious, resulting in the denial of the minimal civilized measures of life's necessities, and (2) that the prison officials were deliberately indifferent to an excessive risk to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To establish deliberate indifference, a prisoner must show (1) a substantial risk of serious harm, (2) the defendants' deliberate indifference to that risk, and (3) causation. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). Under the Eight Amendment, "only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment." Whitley v. Albers, 475 U.S. 312, 319 (1986).

The evidence shows that neither Plaintiff's incarceration in the SMU at Georgia Diagnostic nor Plaintiff's alleged incarceration in the strip cell constituted an Eighth Amendment violation. Regarding Plaintiff's incarceration in the SMU, Plaintiff has failed to show that he was deprived of the minimal civilized measure of life's necessities or that Defendants were deliberately indifferent to his health or safety. Regarding Plaintiff's alleged incarceration in the strip cell, even assuming that Plaintiff was deprived of certain of life's minimal necessities (i.e., clothing), Plaintiff has failed to present evidence showing that Defendants were deliberately indifferent to his health or safety. Plaintiff did not suffer any injury as a result of his incarceration and has not shown that Defendants were aware of a substantial risk to his health and safety. Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's Eighth Amendment claims.

## Qualified Immunity

Defendants have shown that they are entitled to qualified immunity regarding Plaintiff's due process claim related to his confinement in the SMU at Georgia Diagnostic and Plaintiff's Eighth Amendment claims. Defendants Upton, Moore, and Powell have not shown that they are entitled to qualified immunity regarding Plaintiff's due process claims related to his alleged confinement the strip cell, however.

Qualified immunity protects government officials from civil liability when their conduct in performing discretionary functions "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir. 1994) (internal quotations omitted). To determine if a defendant was performing a discretionary function, the court must look to whether the government

employee was preforming a job related function through means that were within his power. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

It is undisputed that Defendants were performing discretionary functions as prison employees at Georgia Diagnostic. A prison employee acting within the scope of his discretionary authority is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). Courts need not consider the two prongs of the analysis in sequence, and a failure to establish either prong requires the claim to be dismissed. Id.

As discussed above, Plaintiff's due process claims regarding his incarceration in the SMU and Plaintiff's Eighth Amendment claims do not amount to constitutional violations. Moreover, Defendants are entitled to qualified immunity for those claims because Plaintiff has failed to show that it is clearly established that the conditions of the SMU gave rise to a liberty interest or that the conditions of SMU or the strip cell constituted cruel and unusual punishment.

There are genuine issues of material fact, however, regarding Plaintiff's right of due process related to his alleged placement in the strip cell for ten days by Defendants Upton, Moore, and Powell. If the evidence is construed in the light most favorable to Plaintiff, Plaintiff's claims regarding the conditions of confinement may give rise to a liberty interest under clearly established law, and there is not sufficient evidence to show that Plaintiff was afforded due process regarding his placement in the strip cell. Should a jury credit Plaintiff's allegations that he was left completely naked in a cell and denied outdoor exercise for ten days, such conditions would be unquestionably punitive in nature and impose an atypical and significant hardship on

the inmate in relation to the ordinary conditions of prison life. The Supreme Court has clearly established, in Sandin, that such conditions implicate a liberty interest and give rise to due process rights. Accordingly, Defendants Upton, Moore, and Powell are not entitled to qualified immunity for Plaintiff's due process claims related to his placement in the strip cell for ten days.

**Damages**

Defendants also contend that Plaintiff's claims must be dismissed because Plaintiff fails to allege a physical injury. Because Plaintiff has failed to meet the physical injury requirement of the PLRA, he may not recover compensatory or punitive damages in this case. Plaintiff also requested "such additional relief as this Court may deem just and proper." Doc. 1 at 44. Because the physical injury requirement of the PLRA does not preclude nominal damages, Plaintiff's claims for nominal damages may proceed.

Pursuant to the PLRA, "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury requirement is "a limitation on recovery only…." Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir. 1999), opinion vacated by 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part by 216 F.3d 970 (11th Cir. 2000). A prisoner may not recover compensatory or punitive damages for emotional suffering absent the showing of a prior physical injury. Al-Amin v. Smith, 637 F.3d 1192, 1196 (11th Cir. 2011); Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003). A plaintiff, however, may recover nominal damages "if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes, 350 F.3d at 1162.

In this case, Plaintiff has failed to allege a sufficient physical injury to recover compensatory or punitive damages. Although, Plaintiff alleges some physical pain and coldness due to his confinement in the strip cell, such claims are not sufficient to show a physical injury. See Quilan v. Personal Transportation Services, Co., 329 Fed. Appx. 246 (11th Cir. 2009); Powell v. Harrison, 2010 WL 331922 (S.D.Ga. 2010). Accordingly, Plaintiff's claims for compensatory and punitive damages must be dismissed.

Plaintiff's claims for nominal damages may proceed. In addition to monetary damages for his suffering, Plaintiff requests "such additional relief as this Court may deem just and proper." The Eleventh Circuit has found that such a request amounts to a request for nominal damages. Boxer X v. Donald, 169 Fed. Appx. 555, 559 (11th Cir. 2006). Accordingly, the Court construes Plaintiff's request as a request for nominal damages. Plaintiff due process claims against Defendants Upton, Moore, and Powell regarding his confinement in the strip cell may proceed for nominal damages.

## CONCLUSION

Because there are no genuine issues of material fact regarding Plaintiff's due process claims and Eighth Amendment claims related to his incarceration in the SMU at Georgia Diagnostic, and because Defendants have shown that they are entitled to judgment as a matter of law, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** regarding those claims. Accordingly, it is **RECOMMENDED** that Defendants Johnson, Malone, Caldwell, Murphy, and Foskey be **DISMISSED** from this lawsuit.

There are genuine issues of material fact, however, regarding Plaintiff's due process claims against Defendants Upton, Moore, and Powell related to Plaintiff's alleged confinement in a strip cell for ten days. Accordingly, it is **RECOMMENDED** that Defendants Upton, Moore,

and Powell be **DENIED** summary judgment on those claims. Because Plaintiff failed to allege a physical injury regarding his confinement in the strip cell, however, any recovery is limited to nominal damages.

Additionally, Plaintiff has failed to respond to the Court's show cause order regarding the Court's inability to serve Defendants Mintz, Baker, Hoobler, and Brown based on the information provided by Plaintiff. Accordingly, it is hereby **RECOMMENDED** that Defendants Mintz, Baker, Hoobler, and Brown be **DISMISSED** from this lawsuit.

**SO RECOMMENDED**, this 5th day of July, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge