IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARVIN TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:10-CV-502 (MTT) |
| | ) | |
| STEVE UPTON, *Warden*, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER**

This matter is before the Court on the Recommendation of United States Magistrate Judge Charles H. Weigle. (Doc. 83). The Magistrate Judge, having reviewed the Defendants' motion for summary judgment, recommends granting the motion in regard to the Plaintiff's due process and Eighth Amendment claims related to the Plaintiff's incarceration in the Special Management Unit at Georgia Diagnostic and Classification Prison as well as the Plaintiff's Eighth Amendment claim regarding his alleged confinement in a stripped cell.[1] However, the Magistrate Judge recommends denying the Defendants' motion regarding the Plaintiff's due process claim arising from confinement in the stripped cell because there are genuine issues of material fact and because the Defendants are not entitled to qualified immunity on that claim. The

---

[1] The Plaintiff says that he was placed in a "strip cell." The Defendants describe the cell as both a strip cell and a stripped cell. No party defines the term. Generally, a strip cell or a stripped cell is a cell stripped of all or almost all necessities and conveniences. Also, all or some of an inmate's clothes are taken when he is placed in a stripped cell. Sometimes the inmate is provided a paper gown. *See, e.g.*, *Edler v. Gielow*, 2010 WL 3958014, at *2-3 (N.D. Fla.); *Mosley v. Bishop*, 2009 WL 1564778, at *1 (S.D. Ala.).

Defendants and the Plaintiff filed objections to the Recommendation. Pursuant to 28 U.S.C. § 636(b)(1), the Court has considered the objections and has made a de novo determination of the portions of the Recommendation to which the Parties object.

The Plaintiff's objections focus on the prison's standard operating procedures and how they constitute a state-created liberty interest. However, post-*Sandin*, "it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Plaintiff also compares the conditions of his confinement in SMU, particularly in E-Wing, to those at the supermax prison discussed in *Wilkinson*. While the Supreme Court held that prisoners had a liberty interest in avoiding incarceration at that particular facility, the Court noted that "two added components" distinguished incarceration at that supermax facility from other solitary confinement facilities: (1) placement was indefinite with only annual review available after an initial 30-day review and (2) placement disqualified otherwise eligible inmates for parole consideration. *Id*. at 224. Neither component is present here. First, placement in SMU is not subject to the same type of review as described in *Wilkinson*. Inmates in SMU who do not receive disciplinary infractions graduate through less restrictive wings and eventually become eligible for placement in the general population when space is available. Second, the Plaintiff makes no allegations that placement in SMU has any impact on parole eligibility, nor is Plaintiff parole-eligible.

The Court agrees with the Magistrate Judge's Recommendation that no constitutional violation occurred as to the Plaintiff's Eighth Amendment claims and his due process claim arising from his confinement in SMU.  In any event, the Defendants are entitled to qualified immunity for those claims because the Plaintiff has failed to show that it is clearly established that the conditions of SMU gave rise to a liberty interest or that the conditions of SMU or the strip cell constituted cruel and unusual punishment.

The Defendants argue that the Plaintiff may not pursue a claim for nominal damages without alleging a physical injury pursuant to 42 U.S.C. § 1997e(e).  While the Eleventh Circuit has not clearly held that nominal damages may always be pursued in the absence of a physical injury as other circuits have,[2] the Eleventh Circuit has stated "nominal damages may sometimes be appropriate under [42 U.S.C. § 1997e(e)]" and "suggested that [42 U.S.C. § 1997e(e)] does not preclude a prisoner from seeking nominal damages if he can establish that he has suffered a constitutional injury."  *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 131 S. Ct. 1651 (2011) (citations omitted).  Thus, the Court finds that the Plaintiff's claim is not barred solely because he has not alleged a physical injury.

The Defendants also argue that they are entitled to qualified immunity on the Plaintiff's due process claim regarding his confinement in the stripped cell because their conduct did not violate clearly established law.  Even if a plaintiff can establish a

---

[2] *See, e.g.*, *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007) (holding that a prisoner may recover nominal or punitive damages for a constitutional violation without showing a physical injury despite § 1997e(e)); *Calhoun v. Detella*, 319 F.3d 936, 941 (7th Cir. 2003) (finding § 1997e(e) inapplicable to awards of nominative or punitive damages for Eighth Amendment violations involving no physical injury).

constitutional violation, he must "'demonstrate that the contours of the right were clearly established in [one of three] ways.'" *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation omitted). First, the Plaintiff may point to a "materially similar case" so that "judicial precedents are tied to particularized facts." *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (internal quotation marks and citation omitted). Second, the Plaintiff can point to a "'broader, clearly established principle [that] should control the novel facts [of the] situation.'" *Id.* at 1255 (citation omitted). Third, "the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (citation omitted). The Plaintiff may only look to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court to carry his burden of showing the Defendants violated clearly established law. *See id.*

Viewed in a light favorable to the Plaintiff, there is evidence that the Plaintiff was twice placed in a stripped cell as a disciplinary measure. The first confinement was for twelve hours, and the second was for ten days. While in the stripped cell, the Plaintiff was completely naked and subjected to excruciatingly cold temperatures.[3] On the first day of the ten day confinement, the Plaintiff alleges that he was denied food. Although the documentary evidence casts considerable doubt on the Plaintiff's allegations,[4] the Court cannot as a matter of law find the allegations false.

---

[3] The Plaintiff does not explain how the Defendants were able to expose him to excruciatingly cold temperatures in October. However, the Plaintiff alleges that during a prior confinement to a stripped cell at a different prison the temperature was 40 to 50 degrees in October in South Georgia. Again, there is no explanation in the record as to how his cell reached such a low temperature in those conditions.

[4] For example, on the day the Plaintiff alleges he was denied food, the Segregation / Isolation Checklist shows the Plaintiff received all three meals. (Doc. 67-11 at 6). Also, the Visitation History shows that the Plaintiff received visits from his niece and mother during the alleged ten-day confinement. (Doc. 67-10 at 2).

The Defendants do not dispute that the Plaintiff did not have the benefit of due process before his alleged punishment.  Rather, the Defendants contend that the Plaintiff was never placed in a stripped cell for punishment; he was housed in E Wing under ordinary circumstances.  They argue those conditions of confinement "cannot be said to be atypical, and [were] certainly not cruel and unusual[, thus] there was no liberty interest such that [the] Plaintiff was entitled to a due process hearing."  (Doc. 85 at 6).  This misses the Plaintiff's point; he contends he was punished without the benefit of due process.

The minimum due process requirements for prisoners facing punishment is clearly established.

> In *Wolff* v. *McDonnell,* 418 U.S. 539 (1974), the Court set forth minimum requirements of procedural due process which should be accorded prisoners: (1) advance written notice of the claimed violation; (2) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would be unduly hazardous to institutional safety or correctional goals.

*Young v. Jones,* 37 F.3d 1457 (11th Cir. 1994).  The Plaintiff allegedly received no due process.  Therefore, the Defendants are not entitled to qualified immunity on the Plaintiff's due process claim arising from his alleged confinement in the strip cell as punishment.

The Court concludes that the Parties' remaining objections do not warrant rejection or modification of the Magistrate Judge's findings.  The Court accepts and adopts the findings, conclusions and recommendations of the Magistrate Judge.  The Recommendation is adopted and made the order of this Court.  The Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.

**SO ORDERED**, this the 10th day of September, 2013.

                                                <u>S/ Marc T. Treadwell</u>
                                                MARC T. TREADWELL, JUDGE
                                                UNITED STATES DISTRICT COURT